NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3751
_____

STEELWORKERS PENSION TRUST
by DANIEL A. BOSH, CHAIRMAN,

Appellant

v.

THE RENCO GROUP, INC.; ILSHAR CAPITAL LLC; BLUE TURTLES, INC.;
UNARCO MATERIAL HANDLING, INC.; ITEVA PRODUCTS LLC; THE DOE RUN
RESOURCES CORPORATION; US MAGNESIUM LLC


_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-16-cv-00190)
District Judge: Honorable Terrence F. McVerry
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 14, 2017
_____

Before: GREENAWAY, JR., SHWARTZ, Circuit Judges, and SIMANDLE, Chief
District Judge.*

(Filed:  May 31, 2017)

---

* Honorable Jerome B. Simandle, Chief District Judge of the United States District
Court for the District of New Jersey, sitting by designation.

_____

OPINION[**]

_____

SIMANDLE, <u>Chief District Judge</u>.

The Steelworkers Pension Trust by Daniel A. Bosh, Chairman, (collectively the "Trust") appeals the District Court's dismissal of its Amended Complaint and denial of its motion to stay arbitration. Because both counts of the Amended Complaint seek withdrawal liability under provisions of the Employee Retirement Income Security Act of 1974 ("ERISA") and the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") which 29 U.S.C. § 1401(a)(1) mandates must be resolved through arbitration in the first instance, the District Court properly ordered this case to arbitration, and we will affirm.

I

This case involves a claim for withdrawal liability arising from the bankruptcy of RG Steel, one of the largest steel producing companies in the United States. The Trust is a multiemployer, defined benefit pension plan. RG Steel was one of over 500 contributing employers to the Trust and made monthly pension contributions on behalf of some of its workers until the company went into bankruptcy and ceased operations in or about August 2012. This triggered RG Steel's withdrawal liability to the Trust under ERISA and the MPPAA, by which it owes its "pro-rata share of a multiemployer, defined

_____

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

benefit pension plan's unfunded vested benefits" so that the Trust can continue to provide monthly pension checks to its vested members. App. 610a.

In March 2011, Defendant The Renco Group, Inc. ("Renco") purchased RG Steel. Because Renco owned 100% of RG Steel through this transaction, RG Steel became part of the "Renco Controlled Group," along with Defendants Ilshar Capital LLC, Blue Turtles, Inc., Unarco Material Handling, Inc., Iteva Products LLC, the Doe Run Resources Corporation, and US Magnesium LLC, which are all subsidiaries of Renco. An entity is a member of a controlled group when its parent company possesses at least 80% of the combined voting power of shares of all classes of stock entitled to vote or at least 80% of the total value of all shares, 26 C.F.R. § 1.414(c)-2(b)(2), and under ERISA, members of a controlled group are jointly and severally liable for the withdrawal liability of any other member. 29 U.S.C. § 1301(b)(1).

RG Steel continued to make pension contributions to the Trust and other single- and multiemployer pension plans on its employees' behalf after it became owned by Renco. However, by the fall of 2011, RG Steel was allegedly insolvent, and Renco was being investigated by the Pension Benefit Guaranty Corporation ("PBGC"), a government agency tasked with administering ERISA's pension insurance program, about RG Steel's ability, and the ability of the other members of the Renco Controlled Group, to cover its unfunded pension liabilities.

On January 17, 2012, Renco transferred a 24.5% interest in RG Steel to Cerberus Capital Management, LP (the "Cerberus Transaction"). The Trust alleges that Renco reduced its ownership in RG Steel in order to remove the company from its controlled

3

group so that it would not be liable for RG Steel's withdrawal liability to the Trust if it ceased operations. According to the Trust, this was the principal purpose of the Cerberus transaction.

Shortly thereafter RG Steel filed for Chapter 11 Bankruptcy ("the RG Steel Bankruptcy"). RG Steel permanently ceased operations, which triggered its withdrawal liability to the Trust under ERISA, 29 U.S.C. § 1383. Renco remained the majority owner of RG Steel, holding 75.5% of the company. The Trust submitted Proofs of Claim for withdrawal liability of over $86 million to the court-appointed Claims and Noticing Agent in the RG Steel Bankruptcy on September 24, 2012. The Trust's Proofs of Claim were included in the Claims and Noticing Agent's Claims Registers in the RG Steel Bankruptcy, and they appeared on the same page as Proofs of Claim submitted by Renco and Ilshar Capital. The Trust avers that the Claims and Noticing Agent made Renco or its counsel aware of the Trust's Proofs of Claim by providing copies shortly after they were filed, but in any instance, Renco had notice of the Trust's claims because all counsel appearing in the RG Steel Bankruptcy, including counsel for Renco, received copies of the Claim Register on January 11, 2013, April 8, 2013, and July 17, 2013. The Trust avers that its Proofs of Claim constituted a lawful Notice and Demand for withdrawal liability under Section 4219 of ERISA, 29 U.S.C. § 1399.

On August 30, 2013, counsel for Renco wrote to the Trust acknowledging Renco's receipt of the Trust's Proofs of Claim from the RG Steel Bankruptcy, and, without identifying on what date Renco received actual notice of the Proofs of Claim, requested review of the withdrawal liability assessment. Renco also asserted by letter that RG Steel

4

was not part of the Renco Controlled Group because of the Cerberus Transaction, and accordingly it was not liable for any of the withdrawal liability assessment. Although the Trust maintains that this challenge was untimely because it came more than 90 days after its Proofs of Claim were submitted, the parties agreed to toll any right to demand arbitration pursuant to ERISA and MPPAA that Renco may have had as of January 28, 2014, so that a separate lawsuit by the PBGC against the Renco Controlled Group for RG Steel's unfunded pension liabilities could proceed. After the PBGC action settled, the Trust sent Renco and the other members of the Renco Controlled Group a 60-Day Cure Notice pursuant to ERISA Section 4219(c)(5), 29 U.S.C. § 1399(c)(5), demanding quarterly payments of the withdrawal liability assessment. When no payment followed, the Trust avers the entirety of the $86 million withdrawal liability became immediately due and owing. Instead of paying the Trust the alleged withdrawal liability, Renco demanded arbitration of the Trust's withdrawal liability assessment.

The Trust filed a two-count complaint in the United States District Court for the Western District of Pennsylvania, alleging that Renco waived its right to arbitrate any defenses to withdrawal liability because it did not timely request review of the Trust's determination, and seeking to set aside the Cerberus Transaction and consider RG Steel part of the Renco Controlled Group because the principal purpose of the transaction was to evade or avoid withdrawal liability. The District Court dismissed the Trust's action and

5

ordered the parties to arbitration, finding that both claims alleged disputes which ERISA and the MPPAA require be resolved by an arbitrator. The Trust appeals.[1]

## II

When an employer withdraws from a multiemployer pension plan, like the Trust, it incurs withdrawal liability corresponding to its pro rata share of the unfunded vested benefits due to the pension fund at the time of its withdrawal. See 29 U.S.C. § 1381(b)(1); Bd. of Trs. of IBT Local 863 Pension Fund v. C & S Wholesale Grocers, Inc., 802 F.3d 534, 537 (3d Cir. 2015). The MPPAA treats entities that are part of a controlled group as a single employer, and makes all members of a controlled group jointly and severally liable for the withdrawal liability assessment of any member. See 29 U.S.C. § 1301(b)(1); IUE AFL-CIO Pension Fund v. Barker & Williamson, Inc., 788 F.2d 118, 127 (3d Cir. 1986).

The MPPAA prioritizes the "quick and informal" resolution of withdrawal liability disputes, and directs parties to arbitration in the first instance in most cases. Flying Tiger Line v. Teamsters Pension Tr. Fund of Phila., 830 F.2d 1241, 1244 (3d Cir. 1987). Collections of withdrawal liability generally proceed through three steps. First, when an employer withdraws from a multiemployer plan, the plan's sponsor or trustee must determine the amount of the employer's withdrawal liability, notify the employer of the amount of liability, and demand payment in accordance with a schedule of payments. 29

---

[1] The District Court's decision is an appealable final order under 28 U.S.C. § 1291. Because the issues involved are purely legal, we exercise plenary review of the District Court's order. Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc. – Pension Fund v. Kero Leasing Corp., 377 F.3d 288, 294 (3d Cir. 2004).

U.S.C. § 1382; Id. § 1399(b)(1). Second, the employer then has 90 days to request a review of its withdrawal liability assessment, and the trustee must engage in a "reasonable review" of its determination and inform the employer of any changes in its withdrawal liability assessment. Id. § 1399(b)(2). Finally, either party may demand arbitration to resolve a dispute concerning the withdrawal liability assessment, on a timetable set by reference to the date on which the employer files its request for review under section 1399(b)(2)(A). Id. § 1401(a)(1).

The statute mandates arbitration for disputes "concerning a determination made under sections 1381 through 1399 of this title." Id.[2] As we stated in Flying Tiger:

> [W]here the party against which withdrawal liability is being asserted was certainly part of the controlled group of an employer subject to MPPAA at some point in time, and where the issues in dispute fall within the purview of MPPAA provisions that are explicitly designated for arbitration, the Act's dispute resolution procedures must be followed.

Flying Tiger, 830 F.2d at 1247. However, if neither party demands arbitration under section 1401(a), the amount of withdrawal liability determined by the trustee is due and owing, on the schedule set by the trustee, and the trustee may bring an action in state or federal court for collection. § 1401(b)(1). In short, the MPPAA sets forth two tracks for

---

[2] 29 U.S.C. § 1401(a)(1) provides in relevant part:
> Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1391 through 1399 of this title shall be resolved through arbitration. Either party may initiate the arbitration proceeding within a 60-day period after the earlier of— (A) The date of notification to the employer under section 1399(b)(2)(B) of this title, or (B) 120 days after the date of the employer's request under section 1399(b)(2)(A) of this title. The parties may jointly initiate arbitration within the 180-day period after the date of the plan sponsor's demand under section 1399(b)(1) of this title.

resolution of withdrawal liability disputes between a trustee and an employer: if a dispute concerns sections 1381 through 1399, the provisions which define withdrawal liability, how it is calculated, and the manner in which it must be demanded, the dispute must be arbitrated in the first instance; but if the dispute concerns section 1401, which describes the requirements for demanding arbitration, it need not be.

In this case, both counts of the Amended Complaint concern disputes under sections 1381 through 1399. First, the Trust's claim that Renco waived its right to arbitrate any defenses to the withdrawal liability assessment because it failed to timely request review of the Trust's demand is a dispute concerning the sufficiency of notice under section 1399 and thus falls "within the purview of MPPAA provisions that are explicitly designated for arbitration." Flying Tiger, 830 F.2d at 1247. The Trust argues that its waiver claim concerns Renco's compliance with the arbitration demand procedure under section 1401, a provision explicitly excepted from the MPPAA's arbitration requirement. It is undisputed that Renco demanded arbitration before the end date of the parties' tolling agreement. That event, however, does not necessarily mean that the tolling period began before the statutory deadline for demanding arbitration expired. More importantly, the Trust's position misstates the crux of this dispute: whether the Trust served statutorily sufficient notice of its demand for withdrawal liability, and whether Renco timely requested review when it sent its challenge letter on August 30, 2013.

These notice and review issues are governed by section 1399(b)(1)-(2). Indeed, the Trust concedes that its case for federal court resolution rather than arbitration "hinges on"

whether its Proofs of Claim submitted in the RG Steel Bankruptcy constituted sufficient notice under the MPPAA, and whether Renco received actual or constructive notice of the Proofs of Claim more than 90 days before it requested review. Appellant Br. at 27.

Our decision in Doherty v. Teamsters Pension Trust Fund of Philadelphia and Vicinity does not compel the opposite conclusion, as the Trust contends. There, we held that it was for a court, and not an arbitrator, to determine whether arbitration was timely demanded after the employer had requested review of the pension fund's withdrawal liability determination. 16 F.3d 1386, 1391 n. 4 (3d Cir. 1994). The question presented in that case fell squarely within section 1401(a)(1), asking us to calculate the deadline for demanding arbitration based on the particular date on which the employer challenged its withdrawal liability. Here, the parties' dispute focuses on steps preceding arbitration, namely the sufficiency of notice and the timeliness of the request for review, which Congress explicitly assigned to arbitration for resolution. The other cases the Trust cites for the proposition that a court must always decide the timeliness of an arbitration demand are inapposite because they, too, concern the timeliness of an arbitration demand under distinguishable circumstances, in which the only factual disputes concerned the third step of the withdrawal liability process. In those cases, it was undisputed either that the employer requested review of its withdrawal liability,[3] or that the employer received

---

[3] See Robbins v. Chipman Trucking, Inc., 866 F.2d 899, 901 (7th Cir. 1988) (parties disputed when time to demand arbitration expired given a delay between the employer's request for review and the trustees' response); Pension Plan for Pension Tr. Fund for Operating Eng'rs v. Weldway Constr., Inc., 920 F. Supp. 2d 1034, 1046 (N.D. Cal. 2013) (finding that even if a communication from the employer constituted a request for review, the following request for arbitration occurred too late); Teamsters Pension Tr. Fund of

something approximating notice and remained silent.[4] Also distinguishable are cases in which the parties consented to have a federal court determine issues that may instead be arbitrable.[5] To hold that a dispute regarding the sufficiency of notice or the timeliness of a request for review can always be wrapped into a determination about the timeliness of arbitration would ignore "the expressed congressional preference for arbitration under the MPPAA." Doherty, 16 F.3d at 1390. Rather, we find the District Court correctly looked to the essence of the parties' dispute – here, the adequacy of the Trust's notice and the date by which Renco had to request review in order to preserve its ability to demand arbitration – rather than solely relying on the MPPAA provision with which the Trust labels its "collection claim" in the Amended Complaint.

Likewise, the Trust's claim that the Cerberus Transaction was an attempt to evade or avoid withdrawal liability must be arbitrated in the first instance. The MPPAA specifically provides that transactions designed to "evade or avoid" withdrawal liability may be disregarded and that those controlled group entities may still be treated as an

Phila. & Vicinity v. Laidlaw Indus., Inc., 745 F. Supp. 1016, 1025-26 (D. Del. 1990) (noting that it was undisputed that the employer had received letters from four different pension funds about withdrawal liability and that it had demanded review from some of them but not arbitration).

[4] See Retirement Plan of Nat. Retirement Fund v. Lackmann Culinary Servs., Inc., No. 7:10-cv-6316, 2011 WL 3366354, at *1-*2, *6 (S.D.N.Y. July 29, 2011) (employer admitted that it did not request a review of the withdrawal liability assessment until federal court action was filed, and did not assert arbitrability as a defense in federal court).

[5] The Seventh Circuit in Chicago Truck Drivers v. El Paso Co., 525 F.3d 591 (7th Cir. 2008), did not reach the issue. There, the parties agreed that the District Court could resolve the adequacy of the trustee's notice. Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. El Paso CGP Co., No. 04-C-7872, 2005 WL 2737072, at *12 (N.D. Ill. Oct. 18, 2005).

10

employer. 29 U.S.C. § 1392(c). Disputes concerning a determination under this section undeniably fall under a provision of the MPPAA designated for arbitration in sections 1381 through 1399. See Id. § 1401(a)(1), supra. Our decision in Flying Tiger is directly on point. In that case, the appellant sought to avoid withdrawal liability on the grounds that the bankrupt entity that incurred the liability was not part of its controlled group, and accordingly it was not an "employer" within the meaning of the MPPAA. We held that "whether [the appellant] ceased to be a MPPAA employer in time to avoid liability for [the related corporation's] withdrawal . . . unavoidably raises an 'evade or avoid' issue under section 1392(c)." 830 F.2d at 1250. Likewise, the Trust's present allegations that Renco sold off 24.5% of the equity in RG Steel to remove the company from the Renco Controlled Group raise "evade or avoid" issues under section 1392(c) and are subject to arbitration. Thus, the District Court was required to dismiss the Amended Complaint and order the parties to arbitration.

## III

For the foregoing reasons, we will affirm the District Court's dismissal of the Amended Complaint and denial of the Trust's motion to stay arbitration.